UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLI C., | |
| Plaintiff, | Case No. C21-5346-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting her allegations, assessing her residual functional capacity ("RFC"), and failing to comply with agency policy when requesting that a medical expert ("ME") respond to an interrogatory. (Dkt. # 23 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1956, has an 11th-grade education, and has worked as a grocery store clerk, janitor, and paintbrush assembler. AR at 18, 21-25, 257, 268. Plaintiff was last gainfully employed in February 2017. *Id.* at 268.

ORDER - 1

1    In June 2018, Plaintiff applied for benefits, alleging disability as of February 1, 2017. AR at 221-28. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 126-29, 131-38. After the ALJ conducted a hearing in May 2020 (*id.* at 10-39), the ALJ issued a decision finding Plaintiff not disabled because she could perform her past work as a small products assembler despite her limitations. *Id.* at 105-17.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 5.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

ORDER - 2

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

IV.   DISCUSSION

A.   **The ALJ Did Not Err With Respect to the ME Interrogatories**

After the administrative hearing, the ALJ requested that an ME complete interrogatories regarding Plaintiff's mental limitations, after reviewing the records provided on a CD. AR at 2123-32. The ME's response (*id*. at 2135-43) was provided to Plaintiff, and Plaintiff did not object to its inclusion in the record. *Id*. at 105, 501-02.

Plaintiff argues in her opening brief that the ALJ was required to provide a summary of her testimony to the ME along with a form to complete. (Dkt. # 23 at 7-9.) The authority cited by the Plaintiff as support for that argument applies to ME hearing testimony rather than interrogatories, but the provision that is applicable also requires that the ME be provided with a transcript or summary of the claimant's hearing testimony along with interrogatories to complete. *Compare* Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-6-70(B), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html (last accessed May 23, 2022), *with* HALLEX I-2-5-42(C), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-42.html (last accessed May 23, 2022). The Commissioner noted the limited applicability of the cited HALLEX provision in her brief and also suggested that the CD sent to the ME complied with the applicable HALLEX provision. (Dkt. # 24 at 10-11 & n.2.) Plaintiff did not rebut or otherwise address this argument in her reply brief. (Dkt. # 25.)

The Court finds that Plaintiff has failed to show reversible error in the ALJ's handling of the ME interrogatory. HALLEX provisions are not judicially enforceable and, in any event, Plaintiff has not shown that the ALJ failed to comply with the HALLEX. *See Moore v. Apfel*,

ORDER - 3

216 F.3d 864, 868-69 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual."). Although Plaintiff speculates that the CD sent to the ME may not have included all of her statements (dkt. # 23 at 8), the record does not establish this, nor does the applicable HALLEX provision require that the documents given to the ME be identified on the record. *See* HALLEX I-2-5-42, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-42.html (last accessed May 23, 2022). Accordingly, the Court finds no basis to conclude that the ALJ erred in handling the ME interrogatories.

### B. The ALJ Did Not Err in Discounting Plaintiff's Allegations

The ALJ summarized Plaintiff's allegations and discounted her testimony because: (1) the objective evidence failed to corroborate Plaintiff's allegation of disabling mental and physical limitations; (2) Plaintiff's ankle condition improved after surgery; and (3) Plaintiff's activities are inconsistent with disabling concentration, postural, lifting, or social limitations. AR at 110-14. Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff first challenges the ALJ's assessment of her testimony on the grounds that she was terminated from her most recent job as a paintbrush assembler for failure to maintain a production pace. (Dkt. # 23 at 5.) The connection between the termination and the ALJ's decision appears to be an argument that the ALJ erred in failing to preclude production-pace work in the RFC assessment and/or in finding that she could perform her past work. *See* AR at 117.

The ALJ noted that although Plaintiff alleged concentration deficits, the record contained many examinations revealing normal concentration and the ALJ found that a restriction to

ORDER - 4

simple, routine work with only brief, superficial public contact and no more than occasional workplace changes would accommodate her concentration problems. AR at 111-12. Plaintiff testified that in her most recent job, she had problems maintaining pace due to concentration problems and that she was eventually terminated from her job due to these deficits. *See id*. at 18-25. At the hearing she also acknowledged, however, that her mental condition improved with the treatment she received after she stopped working. *Id*. at 24-25 (hearing testimony), 767 (Plaintiff requests referral to mental health prescriber in January 2018), 778 (Plaintiff's provider recommends starting therapy, in April 2018). The medical record and opinion evidence confirms Plaintiff's improvement with treatment. *See, e.g.*, *id*. at 635 (Plaintiff's report that her symptoms increased around the time she stopped working), 684 (clinician notes "remarkable increase" in social functioning), 687 (Plaintiff reports to therapist that she is "doing much better tha[n] I was before"), 692 (Plaintiff that she is "doing really well, but I think I need to have more follow through"), 801 (Plaintiff reports improvement with medication), 2135 (ME's statement that Plaintiff's depression and anxiety symptoms improved with treatment). Plaintiff's brief does not address her improvement, and the focus in her briefing on her symptoms at the time of her termination does not show that the ALJ erred in relying on subsequent treatment notes in finding that Plaintiff's mental symptoms were not disabling. *See, e.g.*, *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

       Plaintiff also challenges the ALJ's findings regarding her ankle condition. (Dkt. # 23 at 5-7.) Plaintiff argues that that the ALJ erred in finding that her provider's post-surgery recommendations did not reflect a permanent restriction. (*Id*.) According to Plaintiff, although her post-surgery recommendations were not explicitly applied for 12 months, thereby meeting

ORDER - 5

the durational requirement, they *could* have been applied for that long. (*Id.*) Plaintiff merely speculates that her doctors could have intended that she elevate her leg for a year after her surgery, given that they told her to keep elevating her ankle three months after surgery. (Dkt. # 23 at 6 (citing AR at 1479).) This speculation is not supported by the context of the treatment notes, which indicate that at Plaintiff's most recent appointment (three months after surgery), she was advised to begin transitioning out of her walking boot and into her regular shoes over the next 1-2 weeks. AR at 1474. She was instructed to elevate her foot as much as she could, and asked to return to the clinic in a month to follow-up on her rehabilitation and to obtain "final weightbearing radiographs" of her ankle. *Id*. at 1474-75.

These records do not suggest that a medical provider expected Plaintiff to need to elevate her leg as much as possible for a year, and Plaintiff did not testify that her continued preference for elevating her leg four times per week was based on a medical recommendation. *See* AR at 17-18. Under these circumstances, the ALJ's interpretation of the records as describing temporary limitations is reasonable. *See id*. at 113. Plaintiff has not established error in this portion of the ALJ's decision. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming an ALJ's discounting of temporary restrictions post-accident because they do not pertain to a claimant's long-term functioning).

Lastly, Plaintiff contends that the ALJ erred in failing to fully account for her obesity when crafting the RFC assessment. (Dkt. # 23 at 7.) Plaintiff has failed to identify any other limitations that should have been included, however. Plaintiff has not shown that the ALJ erred in failing to account for all of Plaintiff's alleged limitations stemming from her obesity. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and

ORDER - 6

should[er] injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.").

Because Plaintiff has failed to identify harmful legal error in the ALJ's assessment of her allegations, the Court affirms this portion of the decision.

C.     **The ALJ Did Not Err in Assessing Plaintiff's RFC**

The ALJ's RFC assessment limits Plaintiff to *inter alia* simple, routine work, in a workplace with no more than occasional workplace changes and brief, superficial public contact. AR at 110. Plaintiff argues that the ALJ erred in finding that the RFC assessment adequately accounted for the moderate concentration deficits that the ALJ acknowledged earlier in the decision, at step three. (Dkt. # 23 at 9-10.) This argument fails for two reasons.

First, the ALJ's step-three findings are not equivalent to an RFC finding. There is no internal inconsistency between the ALJ's step-three findings and the RFC assessment because these two parts of the decision do not purport to address the same aspects of the disability evaluation. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process . . . .").

Second, as explained *supra*, the ALJ found that although Plaintiff alleged disabling concentration deficits due to anxiety, the record contained many normal concentration findings and the ALJ interpreted the record to suggest that social and adaptation restrictions would limit exacerbation of Plaintiff's anxiety symptoms. AR at 112. The ALJ's RFC assessment therefore includes several limitations pertaining to Plaintiff's concentration abilities, and Plaintiff has failed to show that the ALJ's findings in this regard are unreasonable or not supported by

ORDER - 7

substantial evidence. Although Plaintiff notes that, in crafting the RFC assessment, the ALJ discounted certain medical opinions (dkt. # 23 at 10), Plaintiff has not shown or even argued that the ALJ erred in so doing.[1] Because Plaintiff has not shown that the ALJ erred in assessing her testimony or the medial opinion evidence, and has not shown that any of the evidence credited by the ALJ described a concentration limitation not included in the RFC assessment, Plaintiff has not shown that the ALJ erred in assessing her concentration abilities. *See Bayliss*, 427 F.3d at 1217-18 (holding that an RFC assessment (or VE hypothetical) need not account for limitations or impairments that the ALJ properly rejected).

### V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 23rd day of May, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[1] In the reply brief, Plaintiff contends that the ALJ purported to discount the State agency consultants' opinions as underestimating Plaintiff's limitations, but erroneously overlooked their opinions stating that Plaintiff could not satisfy production quotas. (Dkt. # 25 at 3.) But the State agency consultants did not opine that Plaintiff could not satisfy production quotas, and instead found that Plaintiff could maintain concentration, persistence, and pace continuously for the two-hour segments involved in a typical workday (AR at 78). *See, e.g.*, Program Operations Manual System DI 24510.005(C)(2)(b), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510005 (last accessed May 23, 2022) (describing a typical workday as involving a lunch break, plus morning and afternoon breaks). Plaintiff has not shown that the ALJ erred in characterizing the State agency opinions.